# Third District Court of Appeal

## State of Florida

Opinion filed July 24, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D23-2180 & 3D23-2260
Lower Tribunal No. 23-20769
_____

**Williams IP Holdings, LLC, et al.,**
Appellants/Petitioners,

vs.

**Claudia Schwarz, et al.,**
Appellees/Respondents.

An Appeal from the Circuit Court for Miami-Dade County, David C. Miller, Judge.

On Petition for Writ of Certiorari from the Circuit Court for Miami-Dade County, David C. Miller, Judge.

Cozen O'Connor, and Ralf R. Rodriguez; Gibson, Dunn & Crutcher LLP, and Thomas G. Hungar, Andrew D. Ferguson (Washington, D.C.), and Justin M. DiGennaro (New York, NY); Mayer Brown, and Gabrielle Levin (New York, NY), for appellants/petitioners.

The Downs Law Group, P.A., and Jeremy D. Friedman and Paul A. Hankin, for appellees/respondents.

Before FERNANDEZ, SCALES and LINDSEY, JJ.

SCALES, J.

Asserting that the trial court misconstrued forum selection clauses contained in two related agreements, defendants below, Williams IP Holdings LLC ("WIPH") and Dorilton Capital Management ("Dorilton") (together "Appellants"),[1] challenge a November 16, 2023 non-final order of the trial court denying Appellants' motion to dismiss Appellees'[2] complaint (Case Number 3D23-2180). Asserting that the trial court failed to apply principles of comity, Appellants alternately seek certiorari review of the same order (Case Number 3D23-2260).

We consolidated the cases. We reverse that portion of the challenged order denying Appellants' motion to dismiss the breach of contract count (Count I) of Appellees' operative complaint because, under the facts and

---

[1] WIPH is a limited liability company organized in the Republic of the Marshall Islands with a business address in Hamilton, Bermuda. WIPH holds and manages intellectual property assets licensed to Williams Grand Prix Engineering ("WGPE"). Dorilton is a limited liability Delaware company headquartered in New York. Dorilton is a private investment firm that owns WIPH, WPGE, and related entities.

[2] Stilus, LLC and Claudia Schwarz (together "Appellees") are plaintiffs in the lower proceedings. Stilus is a limited liability Delaware company with a business address in Aventura, Florida. Stilus is a marketing company owned by Schwarz, a German citizen residing and working in Miami-Dade County.

2

circumstances of this case, the mandatory New York forum selection clause contained in the Public Relations Consultancy agreement ("PR Agreement") supersedes the permissive forum selection clause contained in the Quote 1299 proposal that is a component of the PR Agreement. In light of this holding regarding Appellees' breach of contract claim, we remand to the trial court to adjudicate, in the first instance, Appellants' motion directed toward the remaining defamation claims.

## I.    RELEVANT BACKGROUND

*A. The Parties' Relationship and the Forum Selection Clauses*

In February 2022, WIPH entered into a PR Agreement with Stilus for public relations services. The PR Agreement has a mandatory New York forum selection clause that provides, in relevant part: "This Agreement shall be governed by and construed in accordance with the law of [s]tate of New York and each party hereby irrevocably agrees to submit to the exclusive jurisdiction of the Courts of New York, NY . . . ." The PR Agreement contemplated the parties entering several, related, subordinate agreements for specific tasks.

Pursuant to the PR Agreement, in May 2022, the parties entered into a subordinate agreement for Stilus to provide strategic marketing campaigns, hire and manage staff, purchase necessary supplies and

equipment, and develop a communications department to advertise and promote WIPH brands ("Quote 1299"). Quote 1299 detailed the social media and press costs, staff positions and salaries, invoicing provisions and timelines, and third-party buyout costs. Quote 1299 contains a permissive Florida forum selection clause that provides, in pertinent part: "This declaration and all disputes arising here from shall be governed by the laws of the [s]tate of Florida and parties hereby submit themselves to the jurisdiction of the Florida Courts for any matter arising from or in connection to this Agreement."

In March 2023, WIPH sent a Termination Letter to Appellees listing several alleged material breaches of the PR Agreement, Quote 1299, and certain other interrelated contracts.[3] The Termination Letter indicates that Quote 1299 (with the permissive Florida forum selection clause) is governed by the PR Agreement (with the mandatory New York forum selection clause). The Termination Letter states that all the interrelated agreements are terminated "effective immediately."

---

[3] WIPH based its termination on, among other things, claims alleging unprofessional conduct by Schwarz that allegedly damaged working relations between WIPH and Stilus, a failure to provide adequate financial documentation, Appellees allegedly engaging in a "fraudulent scheme to overbill, and improper charges [to Appellants] for over $6.9 million dollars" through unsupported invoices or invoices for work and expenses that had not received required advance approval.

*B. The New York and Florida Lawsuits*

Following receipt of the Termination Letter, in May 2023, Appellants filed a complaint against Stilus and Schwarz in New York state court alleging, among other things, breach of the PR Agreement. Stilus and Schwarz answered the New York complaint and asserted counterclaims against Appellants. The parties have been actively litigating in the New York action.

In August 2023, Stilus and Schwarz filed their own lawsuit against Appellants in Miami-Dade County Circuit Court.[4] In their Florida lawsuit, Appellees claim that Appellants breached Quote 1299 by wrongfully terminating it prior to its expiration. Appellees also claim that Appellants' allegations in the New York lawsuit are defamatory.

In the Florida action, Appellants filed a motion to dismiss, asserting improper venue and that Appellees' Florida lawsuit failed to state a claim. After conducting a November 13, 2023 hearing on Appellants' motion to dismiss, the Florida trial court entered the November 16, 2023 challenged

---

[4] The claims in the Florida action against WIPH and Dorilton by Schwarz and Stilus consist of: WIPH's Breach of Quote 1299 (Count I); Defamation per se of Schwarz by WIPH (Count II); Defamation per quod of Schwarz by WIPH (Count III); Implied Defamation of Schwarz by WIPH (Count IV); Defamation per se of Schwarz by Dorilton (Count V); Defamation per quod of Schwarz by Dorilton (Count VI); and Implied Defamation of Schwarz by Dorilton (Count VII).

5

order denying the motion. The trial court concluded that the parties, and causes of action raised, in Appellees' Florida complaint were different from those in the pending New York action. Specifically, the trial court found, "the parties are different, the causes of action are different, I will limit the claims to the '1299' contract." From the record, it appears that, because of the trial court's ruling regarding Appellees' breach of contract claim (Count I), the trial court never adjudicated that portion of Appellants' motion to dismiss directed toward Appellees' defamation claims (Counts II through VII).

*C. The Instant Appeal and Certiorari Petition*

Appellants appeal from the circuit court's non-final order pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(A) that authorizes appellate review of an interlocutory order concerning venue. Asserting that the order also violates principles of comity, Appellants filed a petition for writ of certiorari challenging the same order denying Appellants' motion to dismiss. We, *sua sponte*, consolidated the appellate case with the certiorari petition case.

## II.   ANALYSIS

The issue before this Court is whether the trial court erred in its construction and application of the PR Agreement's mandatory forum selection clause. Specifically, we are called upon to decide whether, in

6

Appellees' Florida lawsuit alleging a breach of Quote 1299, the trial court erred by disregarding the PR Agreement's mandatory forum selection clause. On our *de novo* review[5] of the relevant documents, we conclude that the trial court should have enforced the PR Agreement's mandatory New York forum selection clause as to Count I because the PR Agreement is the governing document. Quote 1299 is a "Proposal," as defined within the PR Agreement, and is subsumed into the PR Agreement.

*A. Quote 1299 is Subsumed into the PR Agreement*

The PR Agreement clearly provides that the PR Agreement is composed of "these Terms and Conditions . . . together with the Letter of Appointment *and the agreed Proposal(s)* if any." (Emphasis added). Also, it defines "Proposal" as the "Consultancy's [Stilus] detailed written description of a Campaign to which this Agreement is annexed, and otherwise as may be agreed with the Client in writing from time-to-time." More important, paragraph 2.2 of the PR Agreement provides:

> 2.2 Details of any specific Campaigns proposed by the Consultancy from time to time shall be set out in a Proposal which once agreed between and signed by both parties, *shall be*

---

[5] Our standard of review of a trial court's ruling on a motion to dismiss based on the interpretation of a contractual forum selection clause is *de novo*. See Gold Crown Resort Mktg. Inc. v. Phillpotts, 272 So. 3d 789, 792 (Fla. 5th DCA 2019). Likewise, we apply a *de novo* standard in construing a forum selection clause. See EcoVirux, LLC v. BioPledge, LLC, 357 So. 3d 182, 185 (Fla. 3d DCA 2022).

*incorporated into and form part of this Agreement.* Each Proposal shall set out *details of the Services to be provided* by the Consultancy in relation to the relevant Campaign.

(Emphasis added). This integration clause is a clear reference to Quote 1299, or any proposal like it, as being subsumed into the PR Agreement. Contrarily, Quote 1299 does not contain an integration clause.

The PR Agreement provides the ground rules of the relationship between the parties, while the operational details of the "services to be provided" referenced in the PR Agreement are exhaustively itemized in Quote 1299. Further, paragraph 5.1 of the PR Agreement provides, "the Consultancy's [Stilus] fees for the Services shall be set out in the Proposal." No fees are provided in the PR Agreement, but all fees are included and detailed in Quote 1299.

Additionally, it is telling that Quote 1299 does not contain a termination provision; only the PR Agreement contains a termination provision. This is further evidence that the PR Agreement constitutes the principal governing document. We conclude that Quote 1299 is a component of the PR Agreement and not a separate and independent contract.

*B. The Competing Forum Selection Clauses*

Having determined that Quote 1299 is integrated into the PR Agreement, we turn now to whether the PR Agreement's mandatory New

8

York forum selection clause prevails over Quote 1299's permissive Florida forum selection clause. The trial court did not directly address the issue because it erroneously determined that the two documents were independent of each other, and thus incorrectly concluded that the PR Agreement's mandatory New York forum selection clause was not implicated in Appellees' Florida action. Because we determine that the PR Agreement is the governing document, and the two documents are not independent of each other, we conclude that the mandatory New York forum selection clause applies over Quote 1299's permissive Florida forum selection clause.

While Quote 1299's forum selection clause requires the parties to "submit themselves" to Florida's jurisdiction, Florida courts have held that such language is merely permissive, and does not constitute a mandatory forum selection clause. See, e.g. Sauder v. Rayman, 800 So. 2d 355, 359 (Fla. 4th DCA 2001) (holding "the parties submit" language in a forum selection clause to be permissive). By contrast, the New York forum selection clause contained in the PR Agreement contains clear words of *exclusivity*, requiring the parties to submit irrevocably to the *exclusive* jurisdiction of the courts of New York. "Courts have consistently construed clauses containing the word 'exclusive' and its variants as mandatory." EcoVirux, 357 So. 3d at 186. A mandatory clause generally takes priority and must be enforced by

9

the courts unless shown to be unreasonable or unjust. Phillpotts, 272 So. 3d at 792. "If a forum selection clause 'unambiguously' mandates that litigation be subject to an agreed upon forum, then it is reversible error for the trial court to ignore the clause." Espresso Disposition Corp. 1 v. Santana Sales & Mktg. Grp., 105 So. 3d 592, 595 (Fla. 3d DCA 2013) (quoting Sonus–USA, Inc. v. Thomas W. Lyons, Inc., 966 So. 2d 992, 993 (Fla. 5th DCA 2007)). See Michaluk v. Credorax (USA), Inc., 164 So. 3d 719 (Fla. 3d DCA 2015) (discussing in detail various cases determining whether a forum selection clause is mandatory or permissive). "[P]ermissive forum clauses constitute nothing more than a consent to jurisdiction and venue in the named forum and do not exclude jurisdiction or venue in other forums." Shoppes Ltd. P'ship v. Conn, 829 So. 2d 356, 358 (Fla. 5th DCA 2002). Hence, "[a] permissive forum selection clause may provide an alternative to the statutory choices of venue but it does not require the plaintiff to file the suit in the forum referred to in the agreement." Mgmt. Comput. Controls, Inc. v. Charles Perry Constr., Inc., 743 So. 2d 627, 631 (Fla. 1st DCA 1999).

We therefore have little difficulty in determining that the PR Agreement's mandatory forum selection clause controls, and the parties' contractual disputes are required to be litigated in New York.

*C. Appellees' Defamation Counts*

10

Our record reflects that, because the trial court concluded Appellees' breach of contract claim (Count I) was properly brought in Florida, the trial court did not reach or adjudicate Appellants' arguments directed toward Appellees' defamation claims (Counts II - VII of the operative complaint). On remand, the trial court shall adjudicate Appellants' motion directed to those claims. We decline the parties' invitation to adjudicate that portion of Appellants' dismissal motion in the first instance and express no opinion on the merits of the parties' arguments.

## III.    CONCLUSION

Accordingly, we reverse that portion of the trial court's November 16, 2023 non-final order denying Appellants' motion to dismiss Appellees' breach of contract count based on improper venue, and remand with instructions for the trial court to: (a) enter an order granting Appellants' motion to dismiss the breach of contract count in Appellees' operative complaint; and (b) adjudicate, in the first instance, that portion of Appellants' dismissal motion directed toward the defamation claims in Appellees' operative complaint. We dismiss as moot Appellants' certiorari petition and express no opinion regarding the parties' arguments asserted in either the petition or those related to Appellants' motion to dismiss directed toward Appellees' defamation claims.

11

Reversed and remanded with instructions; petition dismissed as moot.